USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA D. WEXLER,

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

26 Misc. 228 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On March 31, 2026, federal agents seized three mobile phones and two laptops from Defendant, Joshua Wexler's, residence in New York City in connection with his arrest on four Louisiana state warrants. *See* Gov't Opp. at 1–2, ECF No. 27; Reply at 1, ECF No. 31. Wexler moves under Federal Rule of Criminal Procedure Rule 41(g) for the production of search warrants, supporting affidavits, and an inventory in connection with the lawfulness of the search and seizure, or, if such documentation cannot be produced, the return of his seized property and any evidence derived from it. *See* Mot., ECF No. 9.[1] For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On March 31, 2026, Wexler was arrested at his home in New York City on Louisiana state warrants arising from alleged sexual abuse of minors in New Orleans. *See* Gov't Opp. at 2; Balogh Decl. ¶ 2, ECF No. 10. According to the Government, the arrests were executed by U.S. marshals accompanied by special agents from Homeland Security Investigations ("HSI"), a branch of Immigration and Customs Enforcement. Gov't Opp. at 1 n.1, 2. Wexler remained under

[1] On September 28, 2026, Wexler submitted a letter stating that he "withdraws his request for the warrant affidavit" because he "received it from the New Orleans authorities," and attached an affidavit supporting an application for the issuance of a search warrant in Orleans Parish, which was approved on May 5, 2026 (*i.e.*, after the federal seizure). *See* ECF Nos. 32, 32-1. The Court does not understand Wexler's modification to apply to any warrant affidavit associated with the March 31, 2026 seizure by federal agents.

investigation by the Orleans Parish District Attorney's Office, without charge, for at least three months. *See* Reply at 4; Gov't Opp. at 3; Balogh Decl. ¶ 3 n.3. The case has since proceeded to indictment in Orleans Parish. *See* Pet'r Ltr., ECF No. 32.

The HSI special agents seized three mobile phones and two laptop computers (the "Devices") from Wexler's home. Gov't Opp. at 2; Balogh Decl. ¶ 3. Wexler's attorney states that video footage shows the agents reentering Wexler's residence after he had already been removed. *See* Balogh Decl. ¶ 3. Wexler alleges, and the Government does not dispute, that the agents did not present or leave a warrant justifying the seizure, or an inventory, of the Devices. Pet'r Mem. at 1, ECF No. 11; Gov't Opp. at 2; Balogh Decl. ¶ 5. Since then, Wexler has repeatedly sought, without success, a justification for the seizure or the return of the Devices. *See* Balogh Decl. ¶¶ 7–12.

Following the seizure, HSI maintained the Devices for a period of time at its office in New York. Gov't Opp. at 2. HSI extracted data from the Devices without first obtaining a search warrant, and sent the extractions to the New Orleans Police Department ("NOPD"), but the Devices remained at HSI's office in New York. *Id.* On May 5, 2026, the NOPD used the extractions to obtain a Louisiana state warrant to search the Devices for evidence of "indecent behavior with juveniles." *Id*; *see* ECF No. 27-2 (search warrant); *see also* ECF No. 32-1 (warrant affidavit).

On April 23, 2026, Wexler filed a motion for return of the Devices in Orleans Parish Criminal District Court, the court that issued the warrants for his March 31 arrest, pursuant to a Louisiana statute governing the "[d]isposition of property seized in connection with criminal proceedings" (the "Orleans Parish motion"). *See* Gov't Opp. at 2; Reply at 4. On May 19, 2026, Wexler initiated this action for return of the Devices under Rule 41(g) of the Federal Rules of Criminal Procedure. *See* Mot.; *see also* Fed. R. Crim. P. 41(g) (requiring that the motion be "filed in the district where the property was seized").

The Honorable Jay Daniels of the Orleans Parish Criminal District Court held hearings on the Orleans Parish motion on June 4 and June 11, 2026. *See* Gov't Opp. Exs. 3–4. At the June 4 hearing, a state prosecutor told Judge Daniels that "NOPD has [a] valid search warrant," without disclosing that the Devices were not seized pursuant to a warrant. Gov't Opp. Ex. 3 at 16. The prosecutor also argued that the state had no obligations regarding the property because it was "not in possession of anything," *id.* at 17, even though the NOPD had already received extractions from the Devices from HSI. *See* Gov't Opp. at 2. Judge Daniels ordered the state to provide a receipt showing the items that were taken, but denied Wexler the return of the Devices and their contents as a premature request for discovery. Gov't Opp. Ex. 3 at 21–22. At the June 11 hearing, Judge Daniels again indicated that the court viewed the return of the Devices as premature but permitted Wexler's counsel to brief the motion, observing that the "law is clear" that Wexler was "entitled to the receipt" of what was taken. Gov't Opp. Ex. 4 at 7. The record does not indicate Judge Daniels' decision on the motion.

Between the first and second hearings, on June 8, 2026, HSI sent the Devices to the NOPD. *See* Gov't Opp. at 3. This transfer occurred seven days after the Government says it expressly advised HSI not to remove the Devices from the district and four days after state prosecutors repeatedly represented to the court that they did not possess the Devices. *See id.* At the June 11 hearing, the state did not inform the court that it had gained custody and control of the Devices. *See generally* Gov't Opp. Ex. 4. The Government states that it believes the NOPD is searching the Devices pursuant to the May 5 warrant it obtained based on the extractions sent to the NOPD by HSI. Gov't Opp at 3.

## DISCUSSION

I. Legal Standard

Rule 41(g) permits a party "aggrieved by an unlawful search and seizure of property or by the deprivation of property" to "move for the property's return." Fed. R. Crim. P. 41(g). "The court must receive evidence on any factual issue necessary to decide the motion." *United States v. Alvarez-Estevez*, 671 F. App'x 834, 835 (2d Cir. 2016) (summary order) (quoting Fed R. Crim. P. 41(g)). "District courts in this Circuit have applied a three-part test that a moving party must demonstrate in order to prevail on a Rule 41(g) motion: (1) [the party] is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Morgan*, 443 F. Supp. 3d 405, 407 (W.D.N.Y. 2020) (collecting cases) (internal quotation marks omitted). If the court grants the motion, it may "impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g).

II. Analysis

A. Availability of 41(g) Remedy

The Government does not claim that Wexler's property was lawfully seized. *See generally* Gov't Opp. Instead, it argues that the Court "should defer ruling on the Rule 41 Motion given Wexler's pending April 23 [m]otion and ongoing efforts to seek return of the Devices in Louisiana state court." *Id.* at 3. The Court concludes, however, that the equities strongly favor the exercise of the Court's authority under Rule 41(g).

"An order requiring the return of property under Rule 41(g) 'is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of

jurisdiction.'" *Alvarez-Estevez*, 671 F. App'x at 835 (quoting *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006)).

Wexler lacks an adequate remedy at law for the purpose of Rule 41(g). The Government cites a plethora of inapposite cases involving forfeited property to argue that parallel proceedings preclude 41(g) relief. *See, e.g.*, *Bongiorno v. United States*, No. 22-2900, 2023 WL 7648621, at *1 (2d Cir. Nov. 15, 2023) (summary order) (criminal forfeiture); *De Almeida*, 459 F.3d at 382 (criminal forfeiture); *Boyd v. U.S. Dep't of Just.*, 673 F. Supp. 660, 662 (E.D.N.Y. 1987) (civil forfeiture); *United States v. An Antique Platter of Gold*, No. 95 Mag. 2167, 1995 WL 758762, at *1 (S.D.N.Y. Dec. 22, 1995) (civil forfeiture). The Louisiana proceedings are not an underlying civil forfeiture action, nor does the record indicate that the state has instituted a criminal forfeiture proceeding.

Rule 41(g) relief is available to an individual whose property is unlawfully seized during a government investigation. *See Matta v. United States*, 753 F. Supp. 3d 194, 213 (E.D.N.Y. 2024) (granting a 41(g) motion by individual whose laptop and cell phone were seized at the U.S. border pursuant to an HSI investigation). Rule 41(g) relief is particularly appropriate when unlawful seizures occur during criminal investigations because the aggrieved property owner does not yet have a remedy under the exclusionary rule. *See, e.g.*, *Boyd*, 673 F. Supp. at 663 (noting that one purpose of 41(g) is to "deter constitutional violations when the exclusionary rule is ineffectual because of the absence of criminal proceedings").

At the time Wexler requested relief from this Court, he was subject to an investigation—but not criminal charges—in Orleans Parish. Reply at 4; Gov't Opp. at 1. For this reason, Judge Daniels repeatedly stated that his Orleans Parish motion was premature. *See, e.g.*, Gov't Opp. Ex. 3 at 21–22; *id.* Ex. 4 at 7. Additionally, even though the case has now proceeded to indictment, the exclusionary rule remains insufficient to remedy the alleged violations, because no evidence

derived from the Devices has been produced. *See* Pet'r Ltr at 1. Although the Orleans Parish motion apparently remains unresolved, *see* Gov't Opp. Ex. 3 at 21–22; *id*. Ex. 4 at 7, and additional avenues to challenge the seizure may become available to Wexler in Louisiana as his case progresses, the Federal Rules of Criminal Procedure do not contemplate that individuals should be deprived of their statutory remedy for unlawful seizures while they wait for law enforcement to complete an investigation, bring charges against them, and eventually produce suppressible evidence. *See De Almeida*, 459 F.3d at 382 (noting that even in the forfeiture context, a claimant "may lack an adequate remedy at law if the claimant faces months or years of delay").

Furthermore, even if granted, the Orleans Parish motion does not necessarily provide Wexler with a complete remedy under Rule 41(g). The Government has not shown, for example, that the Orleans Parish District Court has the authority under Louisiana law to order HSI to return and/or destroy any copies of the data from the Devices, which may be a component of complete 41(g) relief. *See Matta*, 753 F. Supp. 3d at 214 ("Destruction of copies/records is an equitable form of relief that is recognized pursuant to Fed. R. Crim. P. 41(g).").

Wexler has also shown that the equities favor the Court's exercise of jurisdiction. The Government's submission recounts actions by a federal law enforcement agency which contravene and undermine the constitutional and legal constraints on its conduct. And the Government has disclosed several more examples of concerning conduct. *See* Gov't Opp. at 2. For example, HSI searched the Devices without an explanation of how such a search could be lawful; transmitted the fruits of that apparently unlawful search to NOPD for use in obtaining a search warrant; and transferred the Devices to NOPD in contravention of the Government's express directive, and in a manner suggesting that HSI and NOPD misled the Orleans Parish Criminal District Court about NOPD's possession of the devices. *Id.* The equities strongly favor the Court's intervention.

B. Merits Analysis

Wexler moves for the production of search warrants, supporting affidavits, and an inventory supporting the lawfulness of the search and seizure, or, if such documentation cannot be produced, the return of the Devices and any evidence derived from them. *See* Mot. He also asks the Court to order the destruction of all copies of such evidence. *See id.* To be entitled to relief under 41(g), Wexler must show that he is entitled to lawful possession of the seized property; that the property is not contraband; and that either the seizure was illegal or the Government's need for the property as evidence has ended. *See Morgan*, 443 F. Supp. 3d at 407 (W.D.N.Y. 2020).

As an initial matter, "[t]he court must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g). Whether the Government possessed search warrants, supporting affidavits, and an inventory is a factual issue necessary to determine whether the seizure was illegal. As such, the Court will grant Wexler's request to order the Government to produce these documents, should any exist. If the Government is unable to do so, it must return the Devices to Wexler.

First, there is no dispute that Wexler is entitled to lawful possession of the Devices, which were seized from his residence. Gov't Opp. at 2; Balogh Decl. ¶ 3; *see also* ECF No. 27-2 (Louisiana search warrant referring to the Devices as "used by, owned by or accessed by" Wexler); ECF No. 32-1 (Louisiana search warrant affidavit stating the Devices are "believed to be used by him in his daily activities and for personal and business communications").

Second, the record indicates that the Devices do not contain contraband. Wexler has stated through counsel that the Devices are not contraband. *See* Reply at 4. The May 5 warrant authorizing the NOPD to search the Devices does not mention contraband. *See* ECF No. 27-2. The warrant affidavit states only that "there is probable cause to believe that the[] [D]evices

contain evidence of communications with victims and their parents or guardians, including but not limited to . . . communications related to scheduling, contact, or interaction, as well as related contact information and scheduling data" —not that there is probable cause to believe that the Devices contain contraband. ECF No. 32-1. And, despite HSI's search and the apparently ongoing NOPD investigation, neither the Government in this litigation nor the state prosecutors in Orleans Parish claim to have found contraband. *See* Gov't Opp. at 3 n.2; *id.* Exs. 3–4.

The Fourth Amendment prohibits unreasonable searches and seizures and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Searches and seizures inside a home without a warrant are presumptively unreasonable and, therefore, presumptively unconstitutional. *See Kentucky v. King*, 563 U.S. 452, 459 (2011). Although certain exceptions apply to this general rule, *id.*, none are relevant on this factual record and the Government does not purport to rely on any. *See generally* Gov't Opp.

Additionally, officers executing a seizure are required to prepare an inventory of the property seized and provide to the owner a copy of the warrant and a receipt for the property, or leave the warrant copy and receipt at the place from which the property was taken. *See* Fed. R. Crim. P. 41(1)(B)–(C). Wexler alleges, and the Government does not dispute, that the HSI agents who seized the Devices failed to abide by these procedural requirements. *See* Mem. at 1; *see also* Gov't Opp. at 2.

Continued failure by the Government to produce a warrant, supporting affidavit, and inventory for the seizure of the Devices compels the conclusion that the HSI agents acted unconstitutionally and unlawfully. As such, Wexler is entitled to the return of the Devices under 41(g). *See Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005).

C. Scope of Relief and Conditions on Return

Wexler is entitled to the production of any search warrants, supporting affidavits, and inventory created in the execution of the seizure of the Devices, because this evidence is determinative of the lawfulness of the seizure. *See* Fed. R. Crim. P. 41(g) ("The court must receive evidence on any factual issue necessary to decide the motion."). If the Government cannot produce these documents by the Court's deadline, Wexler is entitled to the return of his property, which includes the Devices, any data extracted from them, and any copies of the Devices and their content or data. *Id.*

He is also entitled to the destruction of records related to the Devices. "Destruction of copies/records is an equitable form of relief that is recognized pursuant to Fed. R. Crim. P. 41(g). The Advisory Committee notes that Rule 41(g) contemplates not only the return but also the destruction of 'copies of records.'" *Matta*, 753 F. Supp. 3d at 214 (quotation omitted).

Wexler also moves for "an inventory of all uses and disclosures of his property and all evidence derived from it" and "all materials derived from any searches" of the Devices. Information about how the Government has used the Devices is distinct from the Devices themselves. *Cf. Ferreira*, 354 F. Supp. 2d at 410–11 (holding that government-made tape recordings of petitioner were not recoverable under 41(g) because the petitioner had no property interest in the recordings). The plain language of 41(g) authorizes the Court to order only the return of Wexler's property, not the production of information about how the Government has used it. *See* Fed. R. Crim. P. 41(g); *see also Matta*, 753 F. Supp. 3d at 214 ("[41(g)] does not contemplate in any way that [it] may be utilized by an 'aggrieved person' to instruct the Government to perform other actions on property or in connection with that property, such as delivering a list of searches.").

A court may "impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g). The record suggests that both HSI and NOPD believe the Devices may be useful for their investigations and Wexler's ongoing criminal case. To protect the Devices' "use in later proceedings," *id.*, the Court orders Wexler not to destroy, dispose of, or transfer ownership of the Devices, or delete or otherwise destroy or render inaccessible the Devices' contents and data.

## CONCLUSION

Wexler's motion is GRANTED IN PART and DENIED IN PART.

By **October 19, 2026**, the Government shall file a letter attaching any and all warrants, warrant affidavits, or inventories associated with the March 31, 2026 seizure of the Devices. If no such documents exist, the Government shall file a letter acknowledging that these documents do not exist. If the Government acknowledges that these documents do not exist or fails to file a letter by that date, the undersigned shall enter an order requiring the return of the Devices and all copies of the Devices, their data, and their content to Wexler. The order shall include the aforementioned conditions preventing destruction, disposal, or transfer of the Devices and their data.

Wexler's request that the Court order the Government to provide Wexler with all materials derived from searches of the devices and an inventory of all uses and disclosures of the devices and evidence derived therefrom is DENIED with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 9.

SO ORDERED.

Dated: October 5, 2026
New York, New York

ANALISA TORRES
United States District Judge